# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| YVONNE JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17 C 6017 |
| v. | ) |
| | ) Judge Ronald A. Guzmán |
| AMERICAN ACCESS CASUALTY COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendant's motion for summary judgment [19] is granted. All other pending motions are denied as moot. Civil case terminated.

## STATEMENT

**Facts**

Defendant provides customers with non-standard automobile insurance. (Pl.'s Resp. Def.'s Stmt. Facts, Dkt. # 24, ¶ 2.) Plaintiff, who suffers from rheumatoid arthritis, began working at Defendant's Downers Grove office as a subrogation adjuster on March 14, 2016. (*Id.* ¶¶ 1, 5, 12.) Santee Erfe was running the day-to-day operations of the subrogation unit at the time of Plaintiff's employment, but had no hiring or firing authority. (*Id.* ¶ 5.) Plaintiff was absent from work on March 23 and March 31, 2016. (*Id.* ¶¶ 16, 17.) According to Plaintiff, she took off one of those two days to care for her daughter, who had a hamstring injury. (*Id.* ¶ 18.) On April 6, Plaintiff was absent from work due to illness. (*Id.* ¶ 19.) On April 13, 15, 20, and 29, Plaintiff missed work because of her arthritis. (*Id.* ¶¶ 2-22.)

During the first week of April 2016, Plaintiff discussed with Erfe the possibility of working from home, and later in April, expressly asked Erfe if she could work from home due to her arthritis. (*Id.* ¶¶ 23, 25.) On April 19, an individual from the Human Resources Department emailed Plaintiff, inviting her to submit medical information in support of her request. (*Id.*) On April 25, Plaintiff submitted a medical certification from her doctor, stating that her arthritis could be accommodated by her working from home three to five days a week. (*Id.* ¶¶ 26, 27.) One hour after Plaintiff submitted her medical certification form, her request to work from home was granted. (*Id.* ¶ 28.) Erfe told Plaintiff she would work in the office on Mondays and Fridays and from home on Tuesdays, Wednesdays, and Thursdays. (*Id.* ¶ 29.) Plaintiff received a written approval of her accommodation request on April 27, 2016 and started working from home on April 28. (*Id.* ¶¶ 30, 32.) Plaintiff was absent from work on Friday, April 29; according to Plaintiff, she missed work that day due to her arthritis. (*Id.* ¶ 33.)

The following Monday, May 2, Plaintiff had a meeting with Dan Behling and Dawn Reynolds, Defendant's Director of Claims and Director of Human Resources, respectively.[1] (*Id.* ¶ 34.) At the meeting, Behling and Reynolds explained to Plaintiff that her excessive absenteeism could lead to her dismissal, and that they expected her to work in the office on Mondays and Fridays. (*Id.* ¶¶ 36-39.) The parties agree that the meeting was short, Reynolds read a written warning to Plaintiff, and she signed it.[2] (*Id.* ¶¶ 35, 39.) On Friday, May 13,

---

[1] In an affidavit, Reynolds states that she works for BP Capital Management, which is Defendant's parent company. (Def.'s Ex. 2, Reynolds Aff., Dkt. # 21, Page 15 of 156, ¶ 3.)

[2] The May 2, 2016 written warning to Plaintiff notes in part that "[s]ince your hire date on March 14, 2016, you have called in sick 7 times and been late once. . . . This is unacceptable and should not happen again. If this continues, you will be terminated." (Def.'s Ex. 12, Dkt. # 21, AACC-00082.)

2

Plaintiff missed work to attend a sporting event for her son.  (*Id*. ¶ 43.)  Instead of using a paid-time-off ("PTO") day, Plaintiff asked Erfe if she could work from home that day and come into the office on one of the days she was supposed to work from home.  (Def.'s Resp. Pl.'s Stmt. Add'l Facts, Dkt. # 26, ¶ 18.)  Erfe denied the request and directed Plaintiff to use PTO for her absence on May 13, 2016.  (*Id*. ¶ 19.)

On May 27, 2016, Plaintiff took bereavement leave for her aunt's funeral.  (*Id*. ¶ 23.)  Defendant's bereavement leave policy states that "[i]n order to receive pay, the employee must supply appropriate supporting documentation."  (*Id*. ¶ 25.)  Plaintiff requested the leave by texting Erfe, who relayed the request to the Human Resources Department or Behling.  (*Id*. ¶ 33.)  Erfe told Plaintiff to bring in the documents supporting her bereavement leave after the funeral, but did not set a deadline for doing so.  (*Id*. ¶ 24.)  Plaintiff called in sick on Friday June 3, 2016, and that same day, Defendant sent Plaintiff a letter via overnight mail, firing her for excessive absenteeism.  (Pl.'s Resp. Def.'s Stmt. Facts, Dkt. # 24, ¶¶ 46, 47.)

Plaintiff sues Defendant under the Americans with Disabilities Act ("ADA") for failing to accommodate her disability, and retaliating and discriminating against her based on her disability.

**Standard**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A "material fact" is one that "might affect

the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

**Analysis**

<u>Failure to Accommodate</u>

In order to succeed on a failure to accommodate claim, Plaintiff must show that: (1) she is a qualified individual with a disability; (2) Defendant was aware of her disability; and (3) Defendant failed to reasonably accommodate the disability. *Brumfield v. City of Chi.*, 735 F.3d 619, 631 (7th Cir. 2013). Defendant concedes for purposes of this motion that Plaintiff is a qualified individual with a disability and that it was aware of her disability; Defendant's motion addresses only whether it reasonably accommodated Plaintiff's disability.

"The ADA does not require an employer to provide the exact accommodation that an employee requests." *Ammons v. Dart*, No. 16-CV-7770, 2018 WL 2096372, at *6 (N.D. Ill. May 7, 2018). "Rather, an employer must do something that effectively accommodates the disabled employee's limitations." *Id*. (citation and internal quotation marks omitted). "When an employer learns that one of its employees is disabled but wishes to remain employed, 'the employer must engage with the employee in an 'interactive process' to determine the appropriate

4

accommodation under the circumstances.'" *Buhe v. Amica Mut. Ins. Co.*, No. 15 C 5340, 2018 WL 835221, at *8 (N.D. Ill. Feb. 13, 2018) (citation omitted). Nonetheless, an employer is not "'obligated to tolerate erratic, unreliable attendance.'" *EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 949 (7th Cir. 2001) (quoting *Waggoner v. Olin Corp.*, 169 F.3d 481, 485 (7th Cir. 1999)).

According to Defendant, it reasonably accommodated Plaintiff's disability by allowing her to work from home three days a week in accordance with her medical certification, which indicated that her disability could be accommodated by allowing her to work from home three to five days a week. Plaintiff contends that Defendant failed to engage in the interactive process to find an accommodation that would have worked for Plaintiff. However, "[w]hile the EEOC regulations accompanying the ADA do suggest that 'it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]' to determine an appropriate accommodation, 29 C.F.R. § 1630.2(o)(3) (emphasis omitted), there is no separate cause of action for a failure of that interactive process." *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014). Plaintiff sought an accommodation and was almost immediately granted the requested accommodation. When Plaintiff continued being absent from work, including for reasons not associated with her disability, Defendant terminated her.

While Plaintiff complains that Defendant unilaterally decided that Plaintiff should work from the office on Mondays and Fridays and work from home on Tuesdays through Thursdays, even though the "medical certification was silent as to how the work from home should be assigned" and "whether this schedule should be flexible," (Pl.'s Resp., Dkt. # 25, at 4), she is not entitled to relief on this ground. *Bunn*, 753 F.3d at 683 (rejecting the plaintiff's failure-to-

5

accommodate claim, stating that the plaintiff's "apparent displeasure with the way in which [the defendant] decided on that accommodation, or with its failure to provide the exact accommodation [the plaintiff] would have preferred, is irrelevant."). It is also worth noting that, when asked at her deposition whether the schedule assigned to her by Defendant was "what [she] wanted," Plaintiff responded, "That was what I needed." (Jones Dep., Def.'s Ex. 3, Dkt. # 21, at 64.) Nor does Plaintiff point to any evidence that she asked for additional accommodation, even when Behling and Reynolds met with her to discuss attendance issues. Because the Court concludes that Plaintiff has not pointed to any evidence creating a genuine issue of material fact with respect to her failure-to-accommodate claim, Defendant is entitled to judgment on this claim.

<u>Retaliation and Discrimination</u>

To state a claim for retaliation under the ADA, Plaintiff must show that she engaged in protected activity, she suffered an adverse employment action, and there exists a causal connection between the protected activity and the adverse employment action. *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018). A claim of disability discrimination requires Plaintiff to show that: (1) she is disabled; (2) she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by her disability. *Roberts v. City of Chi.*, 817 F.3d 561, 565 (7th Cir. 2016). Ultimately, "the appropriate question on summary judgment is simply: could a reasonable jury find based on all available evidence that a discriminatory or retaliatory motive caused [Plaintiff's] termination?" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 569 (7th Cir. 2017). After a review of the record, the Court finds that the answer to this question is "no."

6

According to Defendant, Plaintiff was terminated because of her excessive absences. Plaintiff argues that there was no reason she could not have worked from home five days a week. But simply because Plaintiff may not agree with Defendant's attendance requirements does not mean that she was terminated or retaliated against because of her disability. Plaintiff was provided with the accommodation she sought and told that she needed to be present in the office on Mondays and Fridays. When she had three absences within a month after this warning, Plaintiff was terminated.

Plaintiff asserts that there was "nothing she could have done" to keep her job in case she got sick on Mondays and Fridays. But this assertion is speculative and ignores that two of her three absences following the warning were for personal reasons unrelated to her disability. To the extent that Plaintiff asserts that she was absent one of the days due to a flare up of her arthritis, the Seventh Circuit has stated that "an employee's disability will not preclude an employer from imposing discipline, up to and including discharge, for the employee's violation of a workplace rule, even when there is a connection between the disability and the violation." *Tate v. Ancell*, 551 F. App'x 877, 885 (7th Cir. 2014); *Fogle v. Ispat Inland, Inc.*, 32 F. App'x 155, 157-58 (7th Cir. 2002) ("[T]he ADA does not protect individuals who fail to show up for work, even when their absences are a result of a disability.").

Plaintiff also argues that Defendant's reason for firing her was pretextual,[3] pointing to the declaration of Ryen Jeffries, Plaintiff's colleague who also worked in the subrogation department. According to Jeffries (who has since resigned from employment with Defendant),

---

[3] "Pretext means a lie, specifically a phony reason for some action." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002).

when she asked Erfe several days after Plaintiff's termination why she was not at work, Erfe said "she wasn't a good fit with all that work from home stuff." (Jeffries Decl., Pl.'s Ex. A,, Dkt. 24-1, ¶ 11.) As an initial matter, Erfe's statement, assuming he made it, is hearsay and, therefore, inadmissible.[4] *See Maddox v. Jones*, 370 F. App'x 716, 720 (7th Cir. 2010) (inadmissible hearsay cannot be used to overcome a properly supported motion for summary judgment). Moreover, Erfe was not a decisionmaker, and there is no record evidence demonstrating that he had personal knowledge of the reason for Plaintiff's termination. Indeed, he testified that he did not know the "specific reasons" Plaintiff was terminated and was not privy to the termination process, only that she was terminated. (Erfe Dep., Def.'s Ex. 4, Dkt. # 21, at 36-37.)

Nor does Plaintiff's contention that Defendant treated Jeffries differently support a conclusion of pretext. Jeffries and Plaintiff are not similarly situated. It is undisputed that Jeffries worked from home only one day a week and used PTO as needed to care for her daughter, who has a medical condition. Plaintiff asserts that Jeffries was "allowed to switch days that she worked from home depending on her circumstances," and "was not disciplined for using up her PTO." (Pl.'s Resp., Dkt. # 25, at 9.) But Jeffries was not an introductory employee, as Plaintiff was, and Jeffries resigned from her position when her PTO was depleted. (Jeffries Decl., Pl.'s Ex. A, Dkt. # 24-2, ¶ 8.) No record evidence demonstrates that she had problems with or was terminated for excessive absenteeism prior to her resignation.

---

[4] While statements offered against an opposing party that were "made by the party's agent or employee on a matter within the scope of that relationship and while it existed" are not hearsay under Federal Rule of Evidence 801(d)(2)(D), "[i]n order to be excluded, the declarant must be involved in the 'decisionmaking process affecting the employment action.'" *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 896 (7th Cir. 2018) (citation omitted). Here, there is no record evidence that Erfe was involved in the decisionmaking process to terminate Plaintiff.

**Conclusion**

Because Plaintiff has failed to point to any evidence from which a jury could conclude that Defendant failed to accommodate Plaintiff's disability, or that she was terminated or retaliated against because of her disability, Defendant's motion for summary judgment is granted.

**Date**: August 7, 2018

_____
**Ronald A. Guzmán**
**United States District Judge**